WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leticia Anna Hernandez,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>    Defendant. | No. CV-15-02273-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff Leticia Anna Hernandez's appeal of the Social Security Administration's decision to deny her benefits. (Doc. 1.) For the reasons set forth below, the Court remands for further proceedings.

**BACKGROUND**

On March 9, 2012, Leticia Anna Hernandez applied for disability insurance benefits and supplemental security income, alleging a disability onset date of June 1, 2011. (Tr. 63–64.) Hernandez's claim was denied both initially and upon reconsideration. (Tr. 122–36.) She then appealed to an Administrative Law Judge ("ALJ"). (Tr. 137.) The ALJ conducted a hearing on the matter on December 3, 2013. (Tr. 31.)

In evaluating whether Hernandez was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] At step one, the ALJ determined that

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

Hernandez had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14.) At step two, the ALJ determined that Hernandez suffered from severe impairments of "migraine; headache; [and] lumbar disc disease." (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 18.)

The ALJ then made the following determination of Hernandez's residual functional capacity ("RFC").[2]

> [Hernandez] has the residual functional capacity to perform light level work; she cannot use ladders, ropes or scaffolds; frequently use ramps or stairs, balance, kneel, crouch and crawl; she should avoid concentrated exposure to noise, i.e., limited to the noise level in a normal office setting; she should avoid concentrated exposure to vibration; she should avoid even moderate exposure to hazards, being commonly defined as either unprotected heights [or] dangerous machinery; she can attend and concentrate in 2-hour blocks of time throughout an 8-hour workday with the 2 customary 10-15 [minute] breaks and the customary 30–60 minutes lunch period.

(Tr. 19.) The ALJ therefore found that Hernandez retained the RFC to perform her past relevant work as a cashier, data entry clerk, file clerk and collector. (Tr. 22.) In the alternative, at step five, the ALJ determined that there were a significant number of other jobs in the national economy that Hernandez could perform despite her limitations. (*Id.*)

---

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, . . . she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by her impairments. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

On September 10, 2015, the Appeals Council declined to review the decision. (Tr. 1–5.) Hernandez filed the complaint underlying this action on November 10, 2015, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 15, 16, 17.)

**DISCUSSION**

**I.  Standard of Review**

A reviewing federal court need only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). However, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Nor may the Court "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

/ / /

## II. Analysis

Hernandez argues that the ALJ erred by (A) effectively rejecting the opinion of treating physician Dr. Doorani and (B) rejecting Hernandez's own symptom testimony.

### A. Dr. Doorani

Neurologist Tariq Doorani completed a headache questionnaire in July 2012. The questionnaire noted that Hernandez suffered from migraine headaches (parenthetically described as "severe"), occurring five times a month for an hour at a time, with a pain level of 10/10, affecting Hernandez's concentration, attention, memory, and capacity to work, and likely to lead to an average of four absences from work per month. (Tr. 255.) The ALJ gave this assessment "appropriate but limited weight"[3] for the following reasons:

> It is conclusory in noting the claimant's symptoms. The claimant's limited capacity to work and possible days of absence are not supported by Dr. Doorani's contemporaneous treatment notes. Further, the claimant's most recent neurologist, Dr. George Wang[,] notes no functional restrictions in his notes through August 2013. (Exhibit 17F, pp. 1-2.) Pain management specialist Eric Boyd reported in November 2013 that the claimant had no work restrictions in place. (Exhibit 20F, p. 9.) In addition, a State agency medical consultant raised the issue that Dr. Doorani's opinion looks as if it was written in the same handwriting as the claimant.
>
> A State agency physician reviewed the record in April 2013 and found the claimant capable of a range of light exertional work in April 2013. (Exhibit 6A, pp. 11-12.) The capability for light work is supported by the clinical and diagnostic findings throughout the record as discussed in detail above.

(Tr. 21–22.) Hernandez argues that each of this reasons is either factually unsupported or legally insufficient, leaving the ALJ with no basis for rejecting Dr. Doorani's opinion.

Dr. Doorani was a treating physician. (*See* Tr. 34–35.) The opinion of a treating physician is given more weight than those of non-treating and non-examining physicians. *See* 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is uncontradicted, an ALJ must provide "clear and convincing" reasons, supported by

---

[3] Hernandez argues that the ALJ "effectively rejected" Dr. Doorani's opinion. The Court agrees, as the ALJ did not integrate any of Dr. Doorani's asserted limitations into his RFC determination. (Tr. 21–22.)

- 4 -

substantial evidence, to reject it. *Ghanim v. Colvin*, 763 F.3d 1154, 1160–61 (9th Cir. 2014). If a treating physician's opinion is contradicted, an ALJ must still provide "specific and legitimate" reasons, supported by substantial evidence, to reject it. *Id.*

Here, Dr. Doorani's opinion was not contradicted, and the ALJ needed to provide clear and convincing reasons to reject it. Defendant contends otherwise, citing the opinions of Dr. George Wang and Dr. Eric Boyd. (*See* Doc. 16 at 3 n.1.) But neither doctor's findings contradict those of Dr. Doorani. Dr. Wang reported on June 20, 2013 that Hernandez had a history of headaches, presented that day with a headache, and had been having headaches since early 2011—"throbbing" headaches, with "nausea and vomiting," along with "photophobia and phonophobia," "dizziness," and "visual disturbances." (Tr. 671.) To be sure, he rated Hernandez's pain as a 6–8/10, instead of the 10/10 to which Dr. Doorani opined. (*Id.*) But a difference in degree on the high end of a subjective pain scale, done by two different doctors a year apart does not in this Court's judgment qualify as a contradiction.

Dr. Boyd is, as the ALJ noted, a pain management specialist. According to the records of Dr. Sunita Gupta, a primary care physician who treated Hernandez for at least twenty-two months, (Tr. 559–606, 689–707), Hernandez was referred out to Dr. Boyd to obtain a "second opinion regarding chronic back and neck pain." (Tr. 689.) Dr. Boyd's evaluation correspondingly focuses on Hernandez's "all over body pain"—the severity of which was noted as "10/10 currently, 9/10 at best, 10/10 at worst, 10/10 usually, 10/10 at rest, and 10/10 with activity." (Tr. 715.) A finding of severe body pain, from a pain specialist who was called in to assess body pain and not headaches, does not contradict another doctor's finding of severe headaches.[4]

The ALJ noted Dr. Boyd's observation that Hernandez had no work restrictions in place. (Tr. 21, 716.) But in the context of Dr. Boyd's report, focusing on Hernandez's body pain, this does not contradict Dr. Doorani's opinion, especially since Dr. Boyd's

---

[4] Of note, Dr. Gupta also referred Hernandez to Dr. Wang, specifically to assess Hernandez's headaches. (Tr. 671.) This underlines the point that Dr. Boyd appears to have been specifically focused on one set of Hernandez's symptoms—her body pain.

- 5 -

observation came in the "Family and Social History" of his report and reads as descriptive, rather than prescriptive. In other words, it does not appear that Dr. Boyd was expressing an opinion as to whether Hernandez's condition merited work restrictions; rather, he was merely noting that no doctor had placed Hernandez—who was not working at the time—under work restrictions.

The ALJ also cited to the report of a State agency physician, finding Hernandez capable of a range of "light exertional work." But the conclusions of a non-examining physician are not alone sufficient to reject the opinion of a treating physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Moreover, an opinion considering exertional limitations, without considering the non-exertional limitations caused by Hernandez's headaches, fails to contradict the findings that Dr. Doorani made with respect to those limitations. *See McDowell v. Astrue*, No. CV-06-3053-PHX-FJM, 2007 WL 4510600, at *3 (D. Ariz. Dec. 17, 2007) (noting that a non-examining physician who opined to "exertional limitations" did not "consider the intermittent effects of [the claimant's migraines."). The ALJ further noted that "[t]he capability for light work is supported by the clinical and diagnostic findings throughout the record as discussed in detail above." (Tr. 22.) But the only record citation the ALJ made that referenced Hernandez's headaches was Hernandez's own testimony that "her headaches had decreased from daily to once a week." (Tr. 21.) This does not undermine Dr. Doorani's report, since it is consistent with his opinion of five headaches and four absences a month.

For the same reason that the opinions of Dr. Wang, Dr. Boyd, and the State physician do not contradict Dr. Doorani's opinion, they do not serve as clear and convincing evidence to reject it. Nor do the other reasons the ALJ cited.

The ALJ described the headache questionnaire as "conclusory." The cases dealing with check-off forms from the Ninth Circuit teach that check-off forms may be problematically conclusory, but are not necessarily so. Relevant factors include the physician's relationship with the claimant and the questionnaire's consistency with the

physician's treatment notes. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (finding error when ALJ rejected a "check-box form" questionnaire that was "based on significant experience with [the claimant] and supported by numerous records"). Here, the record reflects that Dr. Doorani had at least a six month long treating relationship with Hernandez prior to filling out the form. (*See* Tr. 35, 256–57, 496–509.) Dr. Doorani's records during this time are consistent with his answers to the headache questionnaire. On December 12, 2011, Dr. Doorani noted that Hernandez had "recurrent headaches," with "sharp pain" and "vision disturbance," four to seven times a week. (*Id.*) On February 3, 2012, Dr. Doorani wrote that Hernandez reported "a couple of episodes where she had complete loss of vision," albeit once without a headache. (Tr. 502.) On April 16, Dr. Doorani reported that Hernandez was having headaches "two or three" times per week. (Tr. 497.) On June 26, 2012, Hernandez was having "more frequent headaches"; "pounding headaches with associated photophobia, phonophobia and nausea." (Tr. 256.) Dr. Doorani's responses to the form, indicating severe headaches that would affect concentration, attention, memory and capacity to work, are consistent with these findings. Finally, while the notes do not directly state how much work Hernandez might be expected to miss, there is no reason they should. *See Orn*, 495 F.3d at 634 ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations."). It was error for the ALJ to reject Dr. Doorani's report on these grounds. *See Hinkley v. Colvin*, No. CV-15-00633-PHX-ESW, 2016 WL 3563663, at *7 (D. Ariz. July 1, 2016).

All that remains is the ALJ's allusion to a State agency physician's opinion that the handwriting on Dr. Doorani's report resembled Hernandez's handwriting. The ALJ did not cite where this statement appeared, though a review of the record finds it in Exhibit 6A, in the report of the State physician discussed in the previous paragraph. (Tr. 111.) There is nothing there but a simple statement that the handwriting on Dr. Doorani's report looked "remarkably similar" to that of Hernandez. (*Id.*) This assertion alone,

1 without more concrete allegations of forgery or references to specific similarities, does
2 not lend itself to meaningful review and is not a clear and convincing reason to reject Dr.
3 Doorani's report.

4 The ALJ therefore committed harmful error in granting limited weight to the
5 opinion of treating physician Dr. Doorani.

### B. Hernandez's Testimony

An ALJ must engage in a two-step analysis in determining whether a claimant's testimony is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If she has, and the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted).

Here, at the first step, the ALJ concluded that Hernandez's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (Tr. 19.) However, at the second step, the ALJ found that Hernandez's statements regarding the intensity, persistence and limiting effects of her symptoms were "not entirely credible." (*Id.*) The ALJ did not state that he found any evidence of malingering; thus, his reasons

for rejecting Hernandez's symptom testimony must be clear and convincing. *Lingenfelter*, 504 F.3d at 1036. The ALJ spent over a page explaining why he found Hernandez not entirely credible. (*See* Tr. 20–21.) Hernandez, however, argues that the ALJ failed to present clear and convincing reasons, in four ways.

First, Hernandez argues that the ALJ "discussed the medical evidence in general" but "failed to link that discussion any finding that any particular portion of Hernandez's symptom testimony was not credible," (Doc. 15 at 10), in contravention of Ninth Circuit precedent. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). But this mischaracterizes the ALJ's opinion, which summarized Hernandez's testimony and then addressed, paragraph by paragraph according to topic, the medical evidence undermining the credibility of Hernandez's testimony. (Tr. 19–21.)

Next, Hernandez asserts that the ALJ improperly required objective medical evidence to corroborate Hernandez's allegations as to the severity of her symptoms. *See Garrison*, 759 F.3d at 1014. But simply because an ALJ may not require objective medical evidence to *corroborate* a claimant's testimony as to severity does not mean an ALJ may not use objective medical evidence to *contradict* that testimony. An ALJ may do so, where—as here—the contradiction is not the sole basis upon which the adverse credibility finding is based. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Third, Hernandez asserts that the ALJ improperly used Hernandez's daily activities to discredit her symptom testimony. Hernandez correctly notes that the Social Security Administration recently issued Social Security Ruling 16-3p, superseding Social Security Ruling 96-7p, and that this new ruling emphasizes that inconsistency between a claimant's allegations of disability and a claimant's daily activities may not be used broadly to discredit the claimant's credibility but only insofar as the daily activities relate to the ability to work. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character;

1   obviously administrative law judges will continue to assess the credibility of pain
2   *assertions* by applicants, especially as such assertions often cannot be either credited or
3   rejected on the basis of medical evidence."). The ALJ's opinion—issued prior to SSR
4   16-3p—contains both permissible and impermissible usage of daily activities to discredit
5   Hernandez.

6   The ALJ began his discussion of Hernandez's credibility by noting that the record
7   reflected Hernandez's "daily activities that included caring for her children, cooking,
8   household chores, shopping, [and] driving." (Tr. 19.) These are the type of daily
9   activities that the Ninth Circuit has noted as being "transferable to a work setting." *See*
10  *Morgan*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding an ALJ's determination that a
11  claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for
12  his friend's child served as evidence of [the claimant's] ability to work"). The ALJ then
13  cited Hernandez's apparent ability to drive as being inconsistent with her "complaints of
14  staring episodes." (Tr. 20.) Later, discussing Hernandez's headaches, the ALJ wrote that
15  "the debilitating aspects of these headaches are not supported by the medical record and
16  the claimant's ongoing activities caring for her children and her household." (Tr. 21.)
17  These were proper, clear and convincing uses of specific work-transferable daily
18  activities to discredit specific portions of Hernandez's allegations.[5]

19  Speaking of Hernandez's "extreme and constant pain," the ALJ noted that
20  Hernandez reported that "standing, walking and physical activity and sexual activity"
21  increased her pain. (Tr. 20.) He then noted reports from multiple doctors reporting
22  Hernandez engaging in "physical activities including hiking" and sexual relations. (*Id.*)
23  Hernandez's reported activities here do not speak to transferable work skills and seem to
24  be cited merely for their inconsistency with Hernandez's statements as to her pain. Thus
25  it was error to use this to discredit Hernandez's testimony; the error, however, was
26  harmless, given that there were other clear and convincing reasons to discredit

---

[5] It is not clear that the ALJ relied on Hernandez's daily activities to discredit any of her hearing testimony regarding headaches; indeed, during the hearing, Hernandez agreed that "if it was only the headaches, [she] could go back to work." (Tr. 51.)

- 10 -

Hernandez's testimony based on her daily activities. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding ALJ's error in discrediting claimant's testimony harmless when "the ALJ provided numerous other record-supported reasons for discrediting the claimant's testimony").

Finally, Hernandez argues that the ALJ erred by citing Hernandez's failed attempt to obtain unemployment insurance benefits as a reason to discredit her testimony. The propriety of using a failed attempt to obtain unemployment benefits to discredit symptom testimony falls in a gray area between two clear lines of case law. On one hand, failed attempts to work may *not* be used to discredit a claimant's subjective allegations, since they indicate that a claimant could not work even though he had the desire to. *See Lingenfelter*, 504 F.3d at 1038. On the other hand, the *receipt* of unemployment benefits, where a claimant holds themselves out as available for full-time work, may be used to discredit a claimant's subjective symptom allegations. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008). Though other circuits have held that failed attempts to obtain unemployment benefits may be considered in evaluating a claimant's symptom testimony, *see Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) (citing *Perez v. Sec'y of HEW*, 622 F.2d 1, 3 (1st Cir. 1980)), the Ninth Circuit has not addressed the question.

Here, Hernandez's attempt to obtain unemployment benefits apparently failed because she was unable to get a doctor's note confirming her ability to work. (Tr. 21, 33.) This alone, without more information as to the circumstances, is not particularly probative of her ability or inability to work. Hernandez did, however, hold herself out in her application as being able to work full-time. (Tr. 337–40, 363.) SSR 16-3p does permit ALJs to consider statements made about symptoms to other sources. 2016 WL 1119029 at *5–6. The Court cannot say that the ALJ erred by including this inconsistency in his analysis.

/ / /

/ / /

### III. Remedy

The Ninth Circuit has set forth a three-part test to determine when it is appropriate to remand for benefits versus further administrative proceedings. First, a court must determine whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100–01 (9th Cir. 2014) (citation and quotation omitted). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. *Id.* (citations and quotations omitted). Third, if the court "concludes[s] that no outstanding issues remain and further proceedings would not be useful, [the court] may . . . find[] the relevant testimony credible as a matter of law" and remand for benefits. *Id.* (citations and quotations omitted). When there are questions regarding the sufficiency of the record as a whole or an ALJ's reasoning, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Gonzales v. Thomas*, 547 U.S. 183, 185 (2006) (quotation omitted).

Here, the ALJ did not provide sufficient reasons to reject Dr. Doorani's opinion that Hernandez would miss an average of four days of work a month because of her headaches. The vocational expert, moreover, testified that even one unscheduled absence per month would, over time, preclude employment. (*See* Tr. 59.) Yet there is a major outstanding issue remaining that would best be resolved at a further proceeding, one which neither party has addressed: Hernandez testified at the hearing that her headaches alone would not preclude her from working. (Tr. 51.) Given that the ALJ only erred in rejecting Dr. Doorani's opinion as to headaches, that is the only remaining ground upon which Hernandez could be found disabled—yet Hernandez's testimony indicates that her headaches were not disabling. Dr. Doorani's opinion, interpreted by the vocational expert, indicates otherwise. It is the job of the ALJ, not this Court, to resolve conflicts and ambiguities in the evidence. *See Andrews*, 53 F.3d at 1039. Because the

contradiction between Dr. Doorani's opinion and Hernandez's testimony must be resolved, the case is remanded for further proceedings not inconsistent with this opinion. *See Treichler*, 775 F.3d 1090, 1106 (9th Cir. 2014).

**IT IS THEREFORE ORDERED** that the Clerk of Court remand this action back to the ALJ for further proceedings.

Dated this 13th day of January, 2017.

_____
Honorable G. Murray Snow
United States District Judge